# Appeal of the Fidelity Insurance, Trust and Safe Deposit Company, Executors.

A testator, by his will, directed his executors, in case within five years after his decease a respectable number of persons could be found to form the nucleus of a Presbyterian congregation in T., to set apart ground, erect a church thereon, and convey the same to the trustees of the General Assembly of said church, in trust for the use of said congregation, and with power, whenever said trustees should deem it expedient, to convey the same to said church and congregation. He further directed his executors, on completion of the building, to deposit a certain sum in trust, the income therefrom to be applied towards the support of the pastor of said church. In case no congregation should be formed within the stipulated period, the testator directed the above devise and bequest to fall into, and become part of his residuary estate. The executors notified the presbytery in whose ecclesiastical jurisdiction the town of T. was situate, and said presbytery thereupon proceeded to organize and constitute a regular congregation and church in said town, notifying the executors of their action in the premises. The executors wrote to the presbytery accepting its action as binding upon them, and acknowledged their obligation to carry out the wishes of the testator. Subsequently, however, at the instance of the residuary legatees and devisees, they declined to go on, averring that they had not sufficient evidence to justify them in building. A bill in equity having been filed in the Common Pleas by the members of the church established in T., as aforesaid, to enforce their rights under the will against the executors, and said executors having filed an answer averring that a respectable number of persons had not been found to form the nucleus of a congregation,—*Held*, that if such a nucleus once were established it was the clear duty of defendants to locate, build, convey and deposit as directed by the will, and that the presbytery, having regularly, and apparently in good faith, organized a congregation, the prima facie presumtion was that there existed a proper nucleus ; that the burden of proof was on defendants to show want of good faith, or gross error of judgment on the part of the presbytery, and that they having failed to do this, complainants were entitled to the relief sought. *Held*, further, that the Common Pleas had jurisdiction in the premises, and that the jurisdiction of the Orphans' Court was not exclusive. *Held*, further, that under the circumstances of the case, the executors having acted in good faith and made no unreasonable delay, the costs should be paid out of testator's residuary estate, not out of the fund in controversy.

January 25th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the Court of Common Pleas No. 1, of *Philadelphia county :* In Equity: Of July Term 1881, No. 31.

Appeal by The Fidelity Insurance, Trust and Safe Deposit Company, executors and trustees under the will of Charles Macalester, deceased, from a decree of said court, directing them to set apart a lot of ground in Torresdale, and erect a church building thereon, and convey the same to the trustees of the general assembly of the Presbyterian Church, in pursuance

of the directions contained in the will of the said Charles Macalester.

The bill in equity was filed by Elisha Swinney, and three others. on their own behalf, and that of "The Macalester Memorial Church of Torresdale," and of any of the members of said church, or any other party in interest who may desire to be made parties and contribute to the expense of the suit, setting forth as follows: Charles Macalester died in December ·1873, leaving a will, whereof he appointed the said Fidelity Company executors and trustees, the sixth clause of which was as follows:—" Sixth. The erection of a Presbyterian church at Torresdale has been a favorite object with me, and would have been carried out before this time, but for the want of sufficient Presbyterian element in the neighborhood. And I hereby direct my executors, in case, within the period of five years after my decease, a respectable number of persons can be found to form the nucleus of a congregation, to set apart about an acre of ground anywhere on Grant avenue (in Torresdale in the Twenty-third ward of the city of Philadelphia), which may be regarded by them as a desirable location, and to erect a church building theron, at a cost of five thousand dollars (and when the said building has been completed, to grant and convey the same premises to the trustees to the General Assembly of the Presbyterian Church in the United States of America, their successors, and assigns, in trust, for the use and benefit, as a place of worship of a church and congregation duly organized at Torresdale, and being in connection with the Presbyterian Church of the United States of America, with power to the said trustees, if they shall at any time deem it expedient, to grant and convey the said premises to such church and congregation in. fee, but always on condition that the same shall be used a place of worship for a church and congregation in connection with the said Presbyterian Church in the United States of America forever). And I further direct my executors, on the completion of said church building, to deposit with the 'Fidelity Insurance, Trust and Safe Deposit Company,' the sum of $5,000, to be held by them in trust, to pay the net income thereof towards the support of the pastor, for the time being, of said church and congregation, forever. But in case no congregation connected with the Presbyterian Church is formed at Torresdale, as aforesaid, within the said period of five years, then I direct that the said two sums of $5,000 each, intended for the erection and support of such church, shall fall into and become part of my residuary estate."

In April 1874, the executors sent a copy of the will to the Presbytery of Philadelphia, North. Action was taken by the presbytery, resulting, in October 1878, in the organization of a Presbyterian church at Torresdale, with a membership of

fourteen persons; and "The Macalester Memorial Church" was regularly placed on the roll of churches of the presbytery. Notice thereof was given to the executors, who expressed their willingness to proceed to erect the church. On July 19th 1878, the executors notified the presbytery "that they had not sufficient evidence to justify them in proceeding." Three additional members were subsequently added to the church, one of whom was made elder, and regular meetings for religious services were held.

The bill prayed that the defendants be ordered to proceed in their duties under the said sixth clause of testator's will; to set apart the lot of ground and erect a church edifice as therein provided; and to convey the property to the corporation named in the will in trust for the Macalester Memorial Church.

The answer averred that complainants were not sufficient in number nor in such circumstances as the terms of the will required, and that they were not property owners nor permanent residents in Torresdale; that a greater number of persons could have been found by Mr. Macalester in his lifetime to form a church, but he deemed the number insufficient. The respondents set forth that the notice, sent by the presbytery to them, led them to believe that the conditions of their testator's will had been fulfilled, but that upon inquiry they ascertained that these conditions had not been fulfilled, and that they were not, therefore, authorized to build the church; that when they wrote the letter of May 27th 1878, stating that they were advised to proceed to erect the church, they relied on the statements of the committee of presbytery, but that as soon as the actual state of the facts was known to them they declined to proceed.

They therefore prayed that the bill be dismissed, and that the sums mentioned in the testator's will for the purpose of establishing the church be decreed to have fallen into and become part of the testator's residuary estate.

The cause was referred by the court to an examiner (John Thompson Spencer, Esq.) to take testimony.

While the cause was thus pending, an application was made to the court by the complainants by petition, to have the costs, counsel fees, &c., of both parties, paid out of the fund in controversy, on the ground that the proceeding was in the nature of a charity information. This application was opposed by the respondents in an answer filed to the said petition. The court, however, on February 12th 1880, made an order that the costs, &c., of the complainants be paid out of the fund.

From this order, the respondents took an appeal to the Supreme Court, which appeal was dismissed by the court, on the ground that the order appealed from was interlocutory (11 W. N. C. 104). The record was thereupon remitted, and the

examiner having filed his report, the cause was heard on bill, answer and proofs.

The Court, ALLISON, P. J., filed the following opinion, April 9th 1881 (after reciting the sixth clause of the will and the averments of the bill) :—

" The material question which is raised by the answer of the defendants, is presented in that part of it which denies that complainants are the proper beneficaries of the trust under the foregoing clause of the will, because, they say, ' Such a number of persons have not been found, to form the nucleus of a congregation, as the provisions of the will contemplate : because they are not property owners, permanent residents of Torresdale, and none are in position to assist in the support of the church ;' and because, as great a number of persons could have been found, during Mr. Macalester's lifetime, as are now associated in the church which has been organized, which number he deemed insufficient to justify him in establishing a church. Around this question all the contention in this case centres ; the defendants virtually admit, that if, within the prescribed period, a respectable number of persons have been found, to form the nucleus of a congregation, such as was contemplated by the testator, and if the court have power to compel the trustees to carry into effect the directions of the will, contrary to their judgment in the premises, the complainants are entitled to the relief for which they pray, which is, that the defendants be ordered to proceed and execute their duties as executors under the said sixth clause of the will, set apart a lot of ground and erect a church edifice thereon, and convey the same to the trustees of the general assembly, in trust for the Macalester Memorial Church in Torresdale.

" I find the following facts alleged in the bill, and either not denied, or confessed by the answer, or proved by the uncontradicted portion of the testimony in the cause.

" First. That the testator was Presbyterian, adhering to the end of his life to the polity and faith of that church, in which he was reared, and in which he had borne office for many years, as a ruling elder. That he died in the city of Philadelphia on December 9th 1873, leaving a will, of which the defendants are the acting executors, wherein he made provision for the erection and maintenance of a church at Torresdale, subject to the condition therein set forth, which fully appears in the sixth section of said will—the said church to be in connection with the general assembly of the Presbyterian Church in the United States of America. That the will in question was dated October 15th 1873, to which was added a codicil, both of which were admitted to probate December 15th 1873.

" Second. Shortly after the decease of Charles Macalester,

and before April 1874, the executors sent a copy of the aforesaid will to the Presbytery of Philadelphia North, within whose ecclesiastical jurisdiction Torresdale lies; from that time and until after May 14th 1878, the executors did nothing to carry into effect this bequest. That on April 22d 1874, shortly after defendants had transmitted to them the copy of the will, presbytery appointed a committee to attend to the matter.

"This committee made report on September 30th following, and, on their recommendation, another committee was appointed to organize a church at Torresdale, if the way should be clear. This committee reported progress April 25th 1875, and from time to time thereafter, until April 16th 1878, when presbytery directed that, without delay, they should organize a mission church at Torresdale. I further find, in this connection, that from the time the company defendants called the attention of presbytery to this matter, by sending to them a copy of the will of testator, their oversight of the project of a church organization was never relaxed, and on May 6th 1878, The Macalester Memorial Church was duly constituted, consisting of fourteen members; to this number three others were subsequently added. This action of the committee was accepted, and their report was adopted by presbytery on October 8th 1878, and the name of The Macalester Memorial Church placed on the roll of presbytery.

"It further appears, by the uncontradicted testimony in the cause, that a decided interest was manifested by many of the people residing in the neighborhood, who were present in considerable numbers at the meetings which preceded, and that at which the church organization was consummated, and that the organization was completed by the appointment of an elder, ad interim, and a moderator. The action of presbytery was shortly thereafter communicated officially to defendants; that on May 27th 1878, they, by letter addressed to the chairman of the committee of presbytery of Philadelphia North, accepted the action of presbytery as binding on them, acknowledging 'that it is made the duty of this company, to set apart an acre of ground on Grant avenue, in Torresdale, and to erect thereon a church building,' and invited consultation with the committee as to plans, &c. That plans in accordance with this suggestion were prepared and submitted for the approval of the executors.

"I further find, that within less than two months after the letter of the defendants above referred to, the chairman of the committee of presbytery without further conference was notified by the company defendant, through its president, that they had not sufficient evidence to justify them in proceeding to build,

and saying, they would prefer a bill in equity to be filed, a master appointed, and an order of court obtained.

" The bill, answer and proofs before us are the result of this refusal to set apart a lot of ground on Grant avenue and erect a church building, all of which, complainants allege, is contrary to the directions of the testator.

" That part of the answer which takes exception to the persons who have been organized into a church, as not answering to the requirements of the will, because they are not in position to assist in the support of the church and are not permanent residents of Torresdale, is not supported by the testimony as to much the larger number of the members : all are able to contribute to a greater or less extent, and the large majority reside in Torresdale, or in the neighborhood of it : nor is it material that they are not property holders, no such qualification was imposed by the testator. So is it, also, a manifest misreading of the will, to interpret it as restricting the residence of the membership to what, in strictness, may be called Torresdale, within the bounds of which the church building was to be erected : by no word or sentence of the will, can be justified the conclusion that it was to be restricted in its use, to the people residing within the boundaries of Torresdale ; the contrary of this appears in the first paragraph of the sixth clause, which reads : ' the erection of a Presbyterian church at Torresdale, has been a favorite object with me and would have been carried out before this time, but for the want of sufficient Presbyterian element in the neighborhood.' It was to the neighborhood then, that the testator looked with the hope, that within its bounds might be found a sufficient number of Presbyterians to constitute a respectable number to form the nucleus of a church. With the knowledge which Mr. Macalester had of the persons who resided in what may be termed the village which he had founded, he could have had little expectation of finding the element necessary for the formation of such a church, as he intended should be established : and therefore, the implied hope, that others might find in the neighborhood that which he had not found. If this was not so, he probably would have described the persons to be found, as respectable, in the sense of being wealthy or well-to-do, which would have a meaning entirely different from the phrase, inserted in the will, ' a respectable number :' this respectable number in the judgment of presbytery has been found, which establishes a prima facie case in favor of the complainants, because it is the action of a judicatory which, at least, in conjunction with the executors, is required to act, before the intention of the testator in this respect can be carried into effect. This declared intention was not simply to secure the finding of the nucleus of a congrega-

tion, made up of Presbyterians, that is, those of Presbyterian predilection or preferences, or who may have been members of other churches of that denomination, and who adhered to the doctrines of the church; but the purpose is clearly expressed, that the structure or building, was to be for the use and benefit, as a place of worship, of a church and congregation, duly organized at Torresdale and being in connection with the Presbyterian Church of the United States of America. The words, 'duly organized' have a special significance in their application to the organization of a Presbyterian church, when used by one who may fairly be presumed to have understood the full force and accurate meaning of the language employed, to express the thought as it lay in his mind; for as we have found, he was a Presbyterian; an intelligent man and one who for years stood forth as an ordained officer of the church with which he was connected. It is not, therefore, straining the language of the will, to hold, that the testator intended that the church for which he was making provision, was to be duly organized according to Presbyterian law and usage; and that law and usage make it absolutely essential that such organization must be supervised and approved by presbytery, for they only can decide what constitutes the due organization of a Presbyterian church. In all cases in which a nucleus of a congregation has been gathered, presbytery alone can decide, whether it shall be duly organized or constituted with the rights and privileges which belong to a completed church organization, and from this it follows, that no authority could as well do the entire work as presbytery, commencing with a due investigation of Torresdale and its neighborhood, in looking for and searching out the Presbyterian element of that locality, in order to ascertain whether it was possible to carry out that which the testator designates as having long been a favorite project of his own. In no other way and through no other channel, could this work be as well done as by presbytery, and of all this, the testator may be supposed to have been well acquainted. And this raises a fair presumption, that his intention was to give to presbytery exclusive control over the entire matter. Whether this is or is not a correct interpretation of the will, it does no violence to its letter or to its spirit, to hold, that that judicatory should at least co-operate with the executors in the effort to find a sufficient body of Presbyterians out of which it was to duly organize a church, before it was called upon to exercise its exclusive jurisdiction of organization and of bringing the church into proper connection with the general assembly. It is to be remembered, that the language of the will is not, 'if my executors can find,' or 'I direct my executors to try and find,' on the contrary it reads, 'if a respectable number of persons can be found;' this

3 OUTERBRIDGE—29

clearly carries with it the idea that effort should be made to find, but no express direction is given as to who should make this effort, and ascertain if it was possible for the persons or body making search for a respectable number of persons, to find them. . It is very certain that the executors did not understand that it was incumbent on them to make this effort in the first instance. This is placed beyond dispute by the testimony of Mr. Gest, who, when asked the question, whether from the time of sending the will to the date named, did the executors or any one for them, make any investigation as to this church matter at Torresdale, he answered, 'having communicated to presbytery as I have stated, I did not deem that any action, on our part, was necessary until we should hear from them, . . . I considered the establishment of the church was for them, while I think the executors and trustees under this will, have a responsibility as to how the church was to be constituted, with reference to the number and character of its members.' This concession admits that the true construction of the will is, that Mr. Macalester intended that presbytery should ascertain if the respectable number of persons could be found, and if this was committed to presbytery, as a duty to be performed by them, if they were to exercise an exclusive judgment and discretion over the matter in the first instance, their action is conclusive and binding on the executors, unless they can show that presbytery has acted in bad faith, or that their action is unwise, and has no proper basis to support it. And this, in substance, is what the defendants have undertaken to do. The opposition now made to this application raises just this issue, which places the burden of proof on those seeking to maintain it; their testimony must not only be sufficient to overcome the prima facie case, which arises upon the presumption of honest and judicious action on the part of presbytery, but it must also be sufficient to disprove the case which the plaintiffs have made by their testimony. We do not see how the defendants could do otherwise than concede the right and the duty of presbytery to make the effort to find the element necessary to a due organization of a Presbyterian church; to do less would be to convict themselves of a gross neglect of a duty imposed by the will. For four years after sending a copy of the will to presbytery, they rested content with doing nothing; from April 1874 to May 1878, not a word was spoken nor an act done by them to carry out a clearly expressed purpose of the testator. It must be taken, then, as admitted by the defendants, that, having given notice to presbytery, the executors rested satisfied, under the belief that they had performed their whole duty, until presbytery, who had five years within which to make the effort, ascertained whether the proper nucleus of a congregation could be found; so entirely

were defendants of this mind, that when notified by presbytery that a church had been formed, they expressed entire acquiescence in what had been done, and communicated such acquiescence in the letter of the vice-president of May 27th 1878.

" There are one or two other matters, which bear on this portion of the case now under consideration; the first is, that in the will is found, not only the manifest intention that the church was to have a due organization, but it was to be so organized that it was to be brought, to use the language of the testator, in connection with the general assembly, and this was impossible to be done unless it was taken under the care and entered on the rolls of presbytery.

" The other thought is, that against the view now asserted by the defendants—that it is their exclusive right to decide the question whether such a respectable number of persons had been found as satisfied the requirements of the will—that the testator when defining the duties of the executors, which he intended should be performed exclusively by them, had no difficulty in finding language that indicates with precision what that intention was : I hereby direct my executors to set apart an acre of ground, erect a church building thereon, and then convey said property. And I further direct them to deposit the sum of $5,000, in trust. There is no mistaking the mandatory character of this language, which is wholly wanting, when he says, if a respectable number of persons can be found, &c.

" It is, of course, necessary that good faith and the securing of necessary results are essential in order to satisfy the requirements of the will. If all that the testator exacted, as preliminary to imposing the duty of building a church at Torresdale on his executors, has not been attained, then the complainants have failed to make out a case entitling them to the relief for which they pray. As already stated, it rests on the defendants to make good by competent proof, either the want of good faith, or gross error of judgment in presbytery, to successfully maintain the stand which they have taken.

" This brings us to the consideration of the most material, and, substantially, the only disputed question of fact which is raised by the testimony : whether the conditions imposed by the testator have been established by the proofs.

" The witnesses examined on the part of the complainants may be divided into two classes ; those who took part under appointment or sanction of presbytery, in the organization of the church, and residents of Torresdale, eleven in all. Those classified under the first head are clergymen, all of whom shared in the examination of the ground, or in the work of organization of the church, the majority of whom are pastors having charge of

churches in the northern section of the city—Frankford, Holmesburg, Bensalem and Falls of the Schuylkill, and Bristol, just outside of the city limits.   Several of these witnesses were connected with this enterprise by appointment of presbytery for all of the period from 1874 until 1878 ; most of them are gentlemen of long association with the Presbyterian church, familiar with its laws and usages, and having experience in the work of organizing new churches.  Their testimony shows that they felt themselves not only justified in organizing the Macalester Memorial Church, but that the prospects of the enterprise are, that it will be successful : that fourteen communicant members, with an attendance on the preaching services of from twenty-five to thirty-five persons, are quite equal to and even greater in numbers, than those with which other church enterprises have been begun and carried on successfully ; to which, in this case, is to be added a house of worship clear of debt and income of $5,000, applicable to the payment of the pastor's salary.   Of the other witnesses, it is to be said that Mr. Thomas is a lumber merchant ; Mr. Myers has a cottage or summer residence at Torresdale ; Mr. Sweeny is a storekeeper in the neighborhood, and Mr. Campbell and Mrs. McLean are plain working people ; the last two have resided at Torresdale one twenty-six and the other seven years.

"Mrs. McLean says she can do no more than take a pew, and the other is willing to give $100 towards the support of the enterprise : all these witnesses express a favorable opinion of the success of the church, and of their purpose to contribute to it.

"One of the witnesses says, from fifteen to thirty-five families of the neighborhood have expressed themselves favorable to the erection of the church building, and an intention to attend the services of the church, and that most of them are able to assist in its support, and are Presbyterian in their preferences.

"On the part of the defendants, nine witnesses have been examined.   The testimony of Effingham Perot and Josiah Bacon is wholly negative in its character, and may, without further remark, be passed by.   Mr. Caldwell and Mr. Gest, the president and vice-president of the company defendant, have no personal knowledge on the subject.   W. G. and Thomas K. Smith, though for years residing at Torresdale, have but little knowledge of the people who are associated in, or connected with, this church and congregation.   When the son was interrogated on the subject, all whom he could say he knew, were the families of Nicoll and McLean and Duncan Tait.   He does not even know Fullerton, nor the Sweeny nor Noble families, nor Susan Fisher, nor James Campbell.

"The testimony of the father does not substantially differ

from that of his son. Neither of them can be supposed to have a very strong desire to see a Presbyterian church at Torresdale; they are of a different religious faith, and attend worship at the convent near by. Each expresses the opinion that the proposed outlay of the money would be an improvident expenditure.

"Mrs. Laughton, who is a daughter of the testator, Geo. Nicoll, who has been in the employ of the Macalester family for over twenty-five years as a gardener, and Edward M. Hopkins, who is a nephew of the deceased, are all the remaining witnesses. Mrs. Laughton resided at Torresdale for many summers, but her associates except her own father, were doubtless of a wholly different class from those who desire to establish this church; she is now a member of the Episcopal church, and is strongly opposed to carrying into effect the desire expressed by the testator, for the reason that she does not believe the church can be sustained. Mrs. Laughton admits that if this bequest of $10,000 lapses and becomes a part of the residuary estate of her father, she will be entitled to half the income for life, and that Nicoll was the only person, in any way or at any time, connected with this church movement, to whom she applied for information in relation to it.

" Nicoll's testimony is against the wisdom of the enterprise, unless some person of wealth will stand in the relation of patron to it. He was one of the original members, and ceased attending upon its services when this suit was brought, because, he says, he thought there were not a sufficient number of members, there was no one to look after its interests and grievances, and because Mrs. Laughton was opposed to it.

"Mr. Hopkins' reasons for opposing the establishing of the charity are substantially the same as those given by the last four witnesses; he says, not one person, outside of a few servants, would attend this church. The weight which should be given to his testimony is manifest from his last two answers upon cross-examination: He says, 'I do not know that this church has been organized, and I do not know that the Presbyterians, for nearly a year, have been holding regular meetings in Torresdale, attended by from twenty to thirty persons.'

" From what I regard as the decided weight of the testimony, I find the fact to be that the condition contained in the will, upon which are made to depend the erection of a building for the use of a Presbyterian church, as contemplated by the testator, exists at Torresdale; that a respectable number of persons have been found, sufficient to form the nucleus of a congregation, which has been duly organized into a church, which is now in connection with the general assembly of the Presbyterian Church of the United States of America.

" I reach this finding of fact, notwithstanding the conclusion which seems to be established by the testimony, that the Pres-

byterian element in Torresdale differs very little from what it was at the time of the death of Mr. Macalester; but it is equally clear that the evidence fails to show that he had any other knowledge upon the subject, except that which other persons might obtain from association with those of his own condition in life, and with whom he was in the habit of daily intercourse, who, with rare exceptions, were connected with, or attendants upon the Episcopal church. Mrs. Laughton is herself unable to say, of her personal knowledge, that her father ever made inquiry among the people residing in the neighborhood, as to the feasibility of organizing a church; or that he ever made an effort, like that which the committee of presbytery made, to call together, at his own house or elsewhere, those who were willing to join in, or favor such an undertaking. If it had been done, Mrs. Laughton and Mr. Nicoll would be most likely, of all persons, to have known all about it. But how does it affect the question, whether Mr. Macalester knew of the Presbyterian element residing in the neighborhood of Torresdale, or whether he did not know? It is sufficient, that having committed to others the duty of seeking out that which he had not found, and the result of their effort being a church well constituted, in the opinion of experienced and competent judges, which was duly organized by presbytery : possessing in its start in life, elements of strength and hope, not belonging to many of the strong Presbyterian churches of to-day, in the dawn of their existence. The fact, after all that may be said to the contrary, stands forth that the nucleus has been found, a church has been duly organized, and all that it now asks is, that the purpose of the testator may be carried into effect by giving to it the shelter and support which he provided for it.

"It is needless to say much of the power of the court, to require a trustee to do that which is imposed on him as a duty, when without reasonable cause, or for want of proper effort, or a neglect to obtain information necessary to an intelligent action, he refuses to exercise the power with which he is vested, or to perform the duty which he is directed to perform. The law is too well settled to require more than a reference to it here. The principle is equally applicable to the case of a trustee, who has a duty enjoined on him to be performed in conjunction with others; in this case, regarded in a light most favorable to the defendants, the duty was a joint duty with the presbytery; all that was required has been accomplished, which being done the testator then said, I direct my executors to do that which the complainants seek to obtain from them through the controlling power of the court because they have refused to go forward. And upon what ground do they justify the course which they have adopted? We think a careful reading of the testimony

will show that a change of purpose on the part of the defendants, and their refusal to erect a church building, was probably founded on the advice of Mr. Hopkins alone, which from Mr. Gest's testimony, shows was volunteered, not solicited. It is true that Mr. Gest speaks of obtaining information from Mrs. Laughton and Mr. Nicoll, but the action of the board of directors of the company defendant was based on the report which Mr. Caldwell says he made to them at a meeting in July 1878, his information on the subject having been obtained from Mr. Gest, and Mr. Gest could not have conferred with Mrs. Laughton, who at the time was absent in Europe, and did not return home until October 1878. Mr. Gest also says his interview with her was subsequent to the conversation he had with Mr. Hopkins.

"Mrs. Laughton testifies that Mr. Nicoll was present when she had her interview with Mr. Gest, and that was after her return from Europe, and Mr. Gest, though testifying to his having conversed with and obtained information from Nicoll, yet he does not speak of having had more than one conversation with him. If they had but the one interview on the subject, then it must have been as late as October 1878. It is admitted, that other than this, there was no investigation by the officers or agents of the executors ; that no search was made by them at Torresdale, or in its neighborhood, and that the only information which they sought, or in any way obtained, was from a source which was either hostile or indifferent to the success of the enterprise. Can this be regarded as fulfilling the full measure of the duty of defendants, or justify them in ignoring the action of presbytery and in refusing to erect a church at Torresdale? We think that it cannot; in no aspect in which the case can be viewed are they justified in maintaining the stand which they have taken ; they have shown no reasonable or sufficient cause, which will excuse them from the performance of that which we regard as a manifest duty imposed on them by the testator.

"The relief for which complainants pray is hereby granted. The costs of the proceeding to be paid by the defendants."

·The following decree was entered :—

"And now, to wit, April 30th 1881, the above cause having been heard upon bill, answer, replication and proofs, it is ordered, adjudged and decreed :

"1. That 'The Fidelity Insurance, Trust and Safe Deposit Company,' executors and trustees of the will of Charles Macalester, deceased, shall forthwith set apart about an acre of ground on Grant avenue, in Torresdale, in the Twenty-third ward of the city of Philadelphia, which may be regarded by

them as a desirable location, and erect a church building thereon at a cost of $5,000.

"2. That when the said building has been completed the said 'The Fidelity Insurance, Trust and Safe Deposit Company,' executors and trustees as aforesaid, shall grant and convey the said lot of ground and church building to 'The Trustees of the General Assembly of the Presbyterian Church in the United States of America,' their successors and assigns in trust, for the use and benefit as a place of worship of 'The Macalester Memorial Church,' now duly organized at Torresdale, in the county of Philadelphia, in connection with the Presdyterian Church of the United States of America, with power to the said trustees, if they shall at any time deem it expedient, to grant and convey the said premises to such church and congregation in fee, but always on condition that the same shall be used as a place of worship for a church and congregation in connection with the said Presbyterian Church in the United States of America forever.

"3. That upon the completion of said church building, the said company, executors and trustees as aforesaid, shall deposit with the 'The Fidelity Insurance, Trust and Safe Deposit Company' the sum of $5,000 to be held by them in trust, to pay the net income thereof towards the support of the pastor, for the time being, of the said 'The Macalester Memorial Church' and congregation forever.

"4. That from the income of the funds directed to be set apart and used for the carrying out of the aforesaid trust by the will of Charles Macalester, deceased, the said company, executors and trustees as aforesaid, deduct the allowance of $182.62, already made to the plaintiff, for their counsel fees and costs of printing, and that they, the said company, out of the said income, pay to the said plaintiffs or their counsel an additional fee of $100, and $20 for cost of printing paper books of argument in the Supreme Court and this court.

"5. That the defendants pay the costs."

The respondents took this appeal, assigning for error, "the assumption of jurisdiction of the case by the Court of Common Pleas, inasmuch as exclusive jurisdiction over the subject matter thereof, is vested in the Orphans' Court;" the various findings of fact; and the decree as above set forth.

*William W. Porter* and *William A. Porter*, for the appellants.—Under a proper construction of the will, the executors, and not the presbytery, were to decide whether the conditions, upon which the church was to be established were fulfilled: French *v.* Davidson, 3 Mad. 396.

[Fidelity Ins. Co.'s Appeal.]

The Orphans' Court has exclusive jurisdiction of the matters involved in the present case on the following grounds : (a) The proceeding is an attempt to compel distribution of a part of Mr. Macalester's estate : Hammett's Appeal, 2 Norris 394. (b) The trust is a testamentary one: Act of June 14th 1836, § 15, proviso (Purd. Dig. 1417, pl. 15); Wapple's Appeal, 24 P. F. Smith 100 ; Jones' Appeal, 3 Grant 169 ; Seibert's Appeal, 7 Harris 53 ; Brown's Appeal, 2 Jones 333, overruling Wheatly v. Badger, 7 Barr 459. The court erred in imposing costs on the defendant.

*Joseph De F. Junkin* and *George Junkin*, for the appellees.—The Orphans' Court has exclusive jurisdiction over testamentary trusts only where the executors or trustees are "by the existing laws amenable to the Orphans' Court." That court is purely a court of statutory jurisdiction, and the statute conferring jurisdiction does not cover this case, the complainants being neither "creditors, legatees or distributees," nor such "parties in interest" as the statute contemplates : Willard's Appeal, 15 P. F. Smith 265; Keene's Appeal, 10 Ib. 504. The object of the bill, though filed by individuals, was to establish the right of "the Macalester Memorial Church" under the will, and of this a court of equity alone has jurisdiction : Ake and Feay's Appeal, 24 P. F. Smith 119 ; Brinker v. Brinker, 7 Barr 55 ; Crowell's Appeal, 2 Watts 295. The bill in fact was filed at the suggestion and request of the respondents, who desired to be protected by a decree.

Mr. Justice TRUNKEY delivered the opinion of the Court, February 6th 1882.

The testator directed his executors, in case, within five years after his decease, a respectable number of persons could be found to form the nucleus of a Presbyterian congregation in Torresdale, to set apart ground, erect a church building thereon, and convey the same to the Trustees of the General Assembly of the Presbyterian Church in the United States, in trust for the use of said congregation, and with power, whenever said trustees should deem it expedient, to convey the same to such church and congregation. He further directed the executors, on completion of the building, to deposit five thousand dollars in trust, the trustees to pay the net income toward the support of the pastor of the said church forever. And in case no congregation connected with the Presbyterian church should be formed within said period, he desired the bequests intended for the erection of the building and support of said church to fall into and become part of his residuary estate.

The testator apprehended that his project for founding a

church might fail for the want of sufficient Presbyterian element in the neighborhood. His will is silent as to the mode of ascertaining this fact, and as to who should determine how many persons would constitute the nucleus. It may be justly inferred that all persons in the neighborhood who would attend worship and belong to the congregation in Torresdale, would be included in the number. Contemplating a small beginning, he ordered the conveyance to be made to an already organized and permanent Presbyterian body. The implication is that the persons entitled to the bounty must be organized under the laws and usages of the Presbyterian Church, and be subject to its discipline. If there is no such organization the plaintiffs have no right; and if there is, such as the testator intended, the devise and bequests will not be defeated by any discretionary act of the executor. When the fact of the nucleus is established; the duty of the executor is plain, and the executor is not made the final judge of its existence. The direction is to locate, build, convey and deposit, in case the described persons can be found; and if not found the bequests become a part of the residuary estate. This is not a case for the executor to form an opinion that the circumstances render it unnecessary, inexpedient and impracticable to recognize a duly organized Presbyterian Church which fulfils the requirements of the will in order to be entitled to the bounty.

The plaintiffs aver that the church organized at Torresdale fulfills the condition in the will; the residuary legatees allege that the organization is a sham, and one of them decidedly expressed to the executor her unwillingness that the church should be erected. In this strait betwixt two, the executor declined to proceed to build, saying, " They would prefer a bill in equity to be filed, a master appointed, and an order of court obtained." It is apparent that the actual contest is between the plaintiffs and residuary legatees, and the evidence is persuasive that, but for the opposition of said legatees and those in their interest, the executor would have treated the organization as real and entitled to the benefits of the will.

Among the findings of fact by the court below are these: That under the directions of the proper presbytery, on May 6th 1878, at Torresdale, The Macalester Memorial Church was duly constituted, consisting of fourteen members, and that three others were subsequently added; that the name of said church, on October 8th 1878, was placed on the roll of presbytery; that the condition contained in the will upon which depends the erection of a building for the use of a Presbyterian Church, exists at Torresdale, that a respectable number of persons has been found to form the nucleus of a congregation which has been duly organized into a church, and is now in connection

with the general assembly of the Presbyterian Church in the United States. We are not convinced that the court erred in the finding of facts. It would be mere supererogation to add to the remarks of the learned president of the Common Pleas, in review of the testimony.

The executor rightly furnished a copy of the will to the presbytery and thereby invited their attention to consideration of the propriety of organizing a church at Torresdale; also to the necessity, if the object of the testator was to be carried into effect. Presbytery acted officially, regularly; its good faith is not assailed, and if its judgment is not sustained, it is not borne down by preponderance of testimony. In the absence of evidence to the contrary, it is presumed that church judicatories, in disposing of matters within their jurisdiction, act honestly and well, and the court rightly ruled that "it rests on the defendants to make good, by competent proof, either the want of good faith, or gross error of judgment in presbytery, to successfully maintain the stand which they have taken."

The appellant may deny the jurisdiction of the Court of Common Pleas at any stage of the proceedings. That court and the Orphans' Court have concurrent jurisdiction of certain subjects; for instance, a legatee may maintain an action in a common-law court for the recovery of a legacy, and the Orphans Court has jurisdiction of proceedings for the recovery of legacies. The Orphans' Court is a special tribunal for specific cases, and, although it has equity powers for the disposition of such cases, it is not vested with the general powers of a court of equity. It has exclusive jurisdiction to ascertain the amount of the estates of decedents and order their distribution among those entitled, whether creditors, legatees or distributees. But the remedy of the creditor to establish his debt in a common-law-court is not taken away : Hammett's Appeal, 83 Pa. St. 392. And in some circumstances he may have execution upon his judgment. Legatees are authorized, by the Act of February 24th 1834, to proceed by action in a common-law court to recover a bequest of money or other goods or chattels, and the procedure enables the legatee to enforce payment when the executor has assets, without interference with the exclusive jurisdiction of the Orphans' Court in the settlement and distribution of the estates of decedents: Burt v. Herron's Ex'rs, 66 Pa. St. 400. The collection of judgments in favor of creditors or legatees may be stayed for a proper time to await settlements or other proceeding in the Orphans' Court. After a legatee has obtained judgment the executor may aver the want of assets, and thereupon execution shall be stayed until an account shall be taken in the proper tribunal, and the amount, if any, payable on such legacy, be ascertained.

[Ringe *v.* Kellner.]

That this is a proper case for determination by a proceeding in equity is unquestioned. The bill is not to compel the distribution of the testator's estate, but to establish the right of The Macalester Memorial Church under the sixth paragraph of his will. This right being established, the decree accords with the provisions of the will. Its enforcement will be governed by similar principles as are prescribed in the statute providing for the recovery of legacies in the common-law courts. The defendant has not averred that the land is necessary for payment of debts, or that there is a deficiency of assets for payment of the bequests. Should such averment be made it would be followed by action of the court in granting a stay till an account be taken and the question of deficiency be determined.

As already stated, it appears that the executor declined to set apart the land and erect the building, agreeably to the wish of the residuary legatees. There was sufficient doubt of the claimants' right to justify the delay until the claim, disputed by said legatees, should be adjudicated. In an action at law for the recovery of a legacy, the statute directs the court, according to justice and equity, either to award costs or no costs out of the testator's estate, or if the executor has been faulty in delaying payment, without sufficient excuse, then the costs shall be paid by him out of his own estate. That rule is fitting in this case. The executor has made no unreasonable delay, and the vigorous defence has been made in good faith, if not at the instance, in the interest of them who denied the plaintiffs' right. We are of opinion that the costs should not be paid out of the fund in controversy, but out of the residuary moneys of the estate of the decedent.

> Decree affirmed, and appeal dismissed at the costs of the appellant; the costs, including costs in the court below, to be paid out of the estate of the testator.